UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| DAVID W. PASS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:10-cv-162 |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying Plaintiff David Pass's application for Child's Insurance Benefits ("CIB").[1] Pass argues that the ALJ erred by finding that he was not disabled because he had engaged in Substantial Gainful Activity ("SGA") through his past work as a teacher. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Br.") 6-12.)

For the following reasons, the Commissioner's final decision will be AFFIRMED.

### II. APPLICABLE LAW

This matter involves an application for Child's Insurance Benefits ("CIB") under Section 202(d) of the Social Security Act ("the Act"), 42 U.S.C. § 402. In order to receive CIB as a disabled adult, Pass must show that he is the child of an individual that is entitled to old-age or

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

disability insurance benefits and is dependent on the insured, is unmarried, and was under a disability as defined in the Act that began before he attained the age of 22. *See* 42 U.S.C. §§ 402(d)(1), 423(d)(1)(A); *see also* 20 C.F.R. § 404.350.  Here, the only issue is whether Pass was under a disability that began before the age of 22.

Disability is defined as the "inability to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  SGA is defined as work that is both "substantial" and "gainful." Substantial work activity "involves doing significant physical or mental activities," 20 C.F.R. § 404.1572(a), and gainful work activity is work for done for "pay or profit," even if a profit is not realized. 20 C.F.R § 404.1572(b).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration has annual earnings guidelines that establish the amount that is presumed to constitute SGA. 20 C.F.R. § 404.1574(b).  In 2000, the threshold amount was $700 per month and in 2001, the threshold was $740 per month. *Id*.  Therefore, a claimant who earned more than $700 per month in 2000 or $740 per month in 2001 is presumed to have been engaged in SGA.

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's

2

impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See* 20 C.F.R. § 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

    The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford*, 227 F.3d at 869.

    To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or

---

[2] Before performing steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC")—the tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 416.920(e).

substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

### III. PROCEDURAL HISTORY

Pass filed an application for CIB on January 26, 2006, alleging he was disabled as of May 31, 1988, due to the late effects of injury on the nervous system. (Tr. 87-88.) His claim was denied initially and upon reconsideration because it was determined that he had engaged in SGA after he reached the age of 22, and was therefore not disabled. (Tr. 15, 71.) Pass made a timely request for a hearing, which was held on January 22, 2009, before Administrative Law Judge ("ALJ") Bryan Bernstein. (Tr. 218-44.) David Pass, who was represented by counsel, appeared and testified on his own behalf, along with his mother, Sandra Pass. (Tr. 218.) Dr. Robert Barkhaus, a Vocational Expert ("VE"), also testified. (Tr. 218.)

On July 8, 2009, the ALJ rendered an unfavorable decision to Pass, concluding that he was not disabled because he had engaged in SGA after he reached the age of 22. (Tr. 12-21.) The Appeals Council denied Pass's request for review on March 26, 2010, making the ALJ's decision the final one of the Commissioner. (Tr. 5-7.) Pass filed a complaint with this Court on May 28, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.) On appeal, Pass argues that the ALJ selectively reviewed the evidence that he was receiving subsidized earnings and improperly found that his past work was SGA.

## IV. FACTUAL BACKGROUND[3]

Pass taught a communications class for the Sheet Metal Workers Union from January 18, 2000, to March 16, 2000, and was paid $1,440.00. (Tr. 116, 124.) He was only hired to teach one class, and his contract expired when the class was complete. (Tr. 123.) Ms. Betty Jones-Taylor, a bookkeeper for the Union, completed a Work Activity Questionnaire for the Social Security Administration and indicated that Pass was fully worth what he was paid, that he was not frequently absent from work, that he did not perform his job under any special considerations, and his work was satisfactory. (Tr. 122.)

Pass also taught an English class at Ivy Tech Community College from August 28, 2000, until December 23, 2000, for which he was paid $3,258.19. (Tr. 81, 93, 180.) Pass continued to teach at Ivy Tech during 2001 and was paid a total of $9,370.72. (Tr. 81.) Additionally, from August 27, 2001, to December 12, 2001, Pass taught a class at the University of St. Francis and was paid $1,500. (Tr. 132.)

In a February 23, 2009, letter, Ms. Donna J. Marr, the Executive Director of Human Resources at Ivy Tech, evaluated Pass's work at Ivy Tech, based on information provided by his supervisor, Michael Keathley. (Tr. 198-99.) The letter indicated that Pass experienced difficulties with his students and co-workers that seemed to increase during the time he taught for Ivy Tech. (Tr. 198.) Students complained that Pass was disorganized, somewhat erratic with classroom organization, and unresponsive to questions. (Tr. 198.) Co-workers reiterated the student grievances, and also complained about his rudeness and inability to timely respond to

---

[3] The administrative record in this case is voluminous (244 pages), and the parties' disputes involve only small portions of it. Therefore, in the interest of brevity, this opinion recounts only the portions of the record necessary to the decision.

requests for information. (Tr. 198.) Mr. Keathley observed Pass in class, and agreed with the assessment from the students and co-workers. (Tr. 199.) Mr. Keathley stated that he worked with Pass to improve his performance, but that his contract was not renewed when he failed to improve. (Tr. 199.) Notwithstanding Pass's poor performance, Mr. Keathley stated that Pass was fully worth his salary because associate faculty at Ivy Tech earned less than they might at other secondary institutions in the area. (Tr. 199.)

Ms. Trudy Bixler stated in an affidavit that Pass paid her $300 to drive him to work from August 28, 2000, to December 23, 2000, and later paid her an additional $300 to drive him to work from February 14, 2001, to June 6, 2001. (Tr. 194.)

Darryl Pass, the claimant's father, also stated in an affidavit that he provided a $2,000 desktop computer system to his son in 2001, and he deducted the amount from what he would have paid his son for work around the home. (Tr. 195-96.) In his affidavit, Darryl Pass claimed that his son needed the computer because it was impossible for him to write, and the computer was required for all written communications and to prepare for classes. (Tr. 195.) He also reported that his son bought $40 in software from the Ivy Tech bookstore, and he paid for it himself. (Tr. 196.)

## IV. DISCUSSION

In this case, the ALJ found that Pass had engaged in SGA because he earned a total of $5,256.19 in 2000 and $10,870.72 in 2001. (Tr. 18.) The ALJ therefore concluded that Pass was not disabled and his application for CIB was denied. (Tr. 21.)

Pass now requests that the Court overturn the ALJ's ruling, contending that the ALJ erred when he determined that his earnings from Ivy Tech were not subsidized and that his work for

the Union in 2000, Ivy Tech in 2000 and 2001, and St. Francis in 2001, was not SGA. (Br. 6-12.) For the reasons stated, however, the Court will not disturb the ALJ's decision.

*A. The ALJ Reasonably Found that Pass's Work at Ivy Tech Was Not Subsidized*

Pass first argues that the ALJ failed to consider evidence that his earnings from Ivy Tech were subsidized. The Social Security Administration has recognized that "[a]n employer may, because of a benevolent attitude toward a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed." SSR 83-33; 20 C.F.R. § 404.1574(a)(2).

The Agency considers a claimant's work to be subsidized "if the true value of [the claimant's] work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to [the claimant] for [his] work." 20 C.F.R. § 404.1574(a)(2). For example, the regulations indicate that subsidized earnings may exist when "a person with a serious impairment does simple tasks under close and continuous supervision." *Id*. The Agency has further indicated that the following circumstances indicate the strong possibility of a subsidy: (1) the employment is "sheltered;" (2) childhood disability is involved; (3) mental impairment is involved; (4) there appears to be a marked discrepancy between the amount of pay and the value of the services; (5) the employer, employee, or other interested party alleges that the employee does not fully earn his or her pay (e.g., the employee receives unusual help from others in doing the work); (6) the nature and severity of the impairment indicate that the employee receives unusual help from others in doing the work; or (7) the employee is involved in a government-sponsored job training and an employment program. SSR 83-33.

If a claimant's earnings are being subsidized by his employer, the Agency will not consider the amount of the subsidy when determining whether the claimant's earnings constitute SGA. 20 C.F.R. § 404.1574(a)(2). Rather, when a claimant's earnings exceed the reasonable value of the work that he performed, the Agency considers only that part of the pay that the claimant actually earned when calculating whether his earnings constituted SGA. 20 C.F.R. § 404.1574(a)(2).

During the hearing, Pass alleged that his 2000 and 2001 earnings from Ivy Tech were subsidized by at least 10%. (Tr. 73-74.) He argued that his earnings were subsidized because he had some difficulties performing his job, such as complaints about him being rude, disorganized, erratic with his expectations to students, and unresponsive to questions. (Br. 6-7.) The ALJ, however, determined that Pass's earnings were not subsidized, based primarily on the report from Donna Marr, stating that Pass was fully worth his salary. (Tr. 20-21.)

Pass now renews his claim that his income was subsidized, now by at least 25%, with a confusing argument that the ALJ selectively reviewed the evidence. Although his argument is difficult to decipher, Pass apparently believes that the ALJ failed to consider testimony from the VE that Pass was not worth his salary because Ivy Tech did not renew his contract. (Br. 6-7.)

Pass's argument is without merit. Although the transcript of the VE's testimony is itself difficult to follow, the VE apparently testified that one of the reasons that Ivy Tech may not have renewed Pass's teaching contract was because he was an ineffective teacher.[4] Despite Pass's

---

[4] Pass apparently bases his argument on the following cryptic exchange between the ALJ and the VE:

ALJ: What could I look for in, in, from someone who was evaluating a professor or an instructor kind of faculty? In determining whether the school or institution thought the reason that the services were, shall we say worthwhile, what would pay for it?

wish to the contrary, the mere fact that he was not a satisfactory employee is hardly evidence that his earnings were subsidized. Indeed, as discussed above, his employer explicitly stated that he was fully worth the full amount that he was paid, in spite of his various shortcomings as a teacher.

Although Pass is correct that the ALJ did not discuss the VE's testimony in his decision, that was not an error. The VE only testified that Ivy Tech *may not have* renewed his contract because he did not perform well, and his testimony is hardly persuasive evidence of subsidy. It is not this Court's function to "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3rd 995, 1001 (7th Cir. 2004). Indeed, the ALJ "need not make written evaluation of every individual piece of evidence in the record," *Schmidt*, 395 F.3d at 744; *Dixon*, 270 F.3d at 1176, as long as he has "buil[t] a logical bridge from the evidence to his conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Here, the ALJ has drawn a logical bridge from the clear evidence to his conclusion that Pass's work was not subsidized, and his decision will not be disturbed.

---

VE: Well, I think, I think as far as an (INAUDIBLE), I'll just say this. The --

ALJ: Well, let's get like a nasty about education faculty. In other words IBFW [sic] has a big problem with that.

VE: No, the, the thing about (INAUDIBLE) is that there's, there's, there's a different standard than there is for a regular (INAUDIBLE). If you're in line for (INAUDIBLE), if they just don't think you're a very effective teacher or they've had complaints from students, they don't renew your contract. So it's much simpler just to simply --

ALJ: So there's no ongoing -- it might not be renewed for other reasons but you're saying that's an indicator?

VE: Yeah. I mean it's just much easier for having somebody teaching and they don't give. They hurt their students. They're not very effective and they have problems or whatever.

9

Notably, Pass has failed to discuss any of the factors under SSR 83-33 that indicate earnings may be subsidized. There is absolutely no evidence that Pass's work environment at Ivy Tech was a "sheltered" work environment, nor is there any evidence that Pass received unusual help from others in performing his job. Pass's position at Ivy Tech apparently did not involve a government-sponsored job training or employment program. Furthermore, Pass has made no attempt to demonstrate that there was a marked discrepancy between the amount of his pay and the value of his services. Absent legal error or a "patently wrong" decision, the Court will not remand the case simply in hopes that a new ALJ will view the same evidence in a different light. *See Young*, 362 F.3d at 1001; *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447 (7th Cir. 2004); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).

*B. The ALJ Reasonably Determined that Pass's Work for the Union Was SGA*

Pass next claims that the ALJ erred by finding that his work for the Sheet Metal Workers Union was SGA. In his decision, the ALJ found that Pass earned $1,440 teaching a communications class for the Union from January 18, 2000, until March 16, 2000. (Tr. 18.) The ALJ then noted that, "while [Pass] argued that he worked there for three months, this work clearly lasted just two months." (Tr. 18.) The ALJ proceeded to divide his total earnings of $1,440 by the total number of months he actually worked (2), to reach a monthly average of $720. (Tr. 18.) The ALJ also averaged Pass's earnings on a weekly basis and found that he earned $360 in January, $720 in February, and $360 in March. Because Pass's earnings exceeded the limit of $700 per month through either method of calculation, the ALJ determined that Pass's work for the Union was SGA.

On appeal, however, Pass renews his argument that the ALJ should have divided his

gross earnings by three months instead of two months. In support, Pass cites to SSR 83-35, and summarily argues that "[i]t is, therefore, necessary to average the individual's 'countable income' by figuring total 'countable income' over a represented period of time and dividing the number of months in that period." (Br. 8.) Pass is essentially asking the Court to credit him the days in January and March 2000 he did not work, with the goal of artificially deflating his average earnings by dividing them by three months instead of two.

This somewhat disingenuous argument is, as the Commissioner correctly recognizes, without any basis in logic or law. Pass worked for the Union from January 18, 2000, until March 16, 2000. Although his work spanned three different months, he clearly only worked for a total of two months.

Furthermore, in selectively quoting SSR 83-35, Pass omits other language from the same section that provides that "[w]hen the individual worked for a continuous period of time but is no longer working, earnings are to be averaged over the *actual period of work involved*." (Emphasis added.) Similarly, the Program Operations Manual System ("POMS") DI 10505.015(C)(1) directly address this scenario. The POMS indicates that, when partial months of work activity involve significantly different earnings and/or numbers of days worked, the earnings from these partial months should not be averaged into the overall average monthly earnings calculation. The POMS provision also states that "[b]y not averaging partial work months with significantly lower earnings, our intent is to avoid artificially lowering the figure determined to be the average monthly earnings by including months which are not representative of the rest of the period of employment."

In sum, the ALJ's finding that Pass's work for the Sheet Metal Workers Union was SGA

is supported by the clear weight of the evidence, applicable Social Security regulations, and common sense, and will be affirmed.[5]

*C. The ALJ Reasonably Determined that Pass's Work Activity for Ivy Tech in 2000 Was SGA*

Similarly, Pass argues that the ALJ incorrectly found that the $3,258.19 he earned teaching at Ivy Tech from August 28, 2000, until December 23, 2000, was SGA. The ALJ found that if Pass's earnings were averaged by the number of months he worked, his average gross monthly wage was $814.54, whereas if his earnings were averaged by the number of weeks he worked, his average gross monthly wages were $543.00 in September 2000; $1086.00 in both October and November 2000; and $543.00 in December 2000. Because Pass's earnings exceeded the SGA limit of $700 through either formula, the ALJ determined that he had engaged in SGA.

Pass now argues that these earnings did not constitute SGA. He claims that his average monthly wage of $814.54 should be reduced by 25% because it was subsidized, and that the $300 dollars he paid in transportation costs should also be deducted from his earnings as an Impairment-Related Work Expense ("IRWE").[6]

Pass's second argument fares no better than his first. As previously discussed, Pass has

---

[5] Having affirmed the ALJ's finding that Pass was not disabled because his work for the Union was SGA, the Court could end its analysis. To complete the record, however, the Court will address Pass's remaining arguments.

[6] Pass also apparently argues that the ALJ should have "averaged" his income because he was working on a semester basis as an adjunct professor. This summary argument also fails, because it is readily apparent that the ALJ did determine Pass's average income, on both a monthly and weekly basis. Pass must fully develop his own arguments—the Court will not do so for him. *See Webster v. Astrue*, 580 F. Supp. 2d 785, 794 (W.D. Wis. 2008) (explaining in a social security appeal that undeveloped arguments are deemed waived (citing *Kochert v. Adagen Med. Int'l, Inc.*, 491 F.3d 674, 679 (7th Cir. 2007)).

presented no evidence that his earnings were subsidized. Indeed, as the ALJ correctly noted, the evidence shows that Pass's supervisors at Ivy Tech believed he was fully worth what he was paid. Without a subsidy deduction, Pass's income remains solidly above the $700 limit.

Furthermore, Pass has not established that the ALJ erred in finding him ineligible for an IRWE deduction. An IRWE is an expense for an item or service which is directly related to enabling an impaired individual to work and which is necessarily incurred by that individual because of a physical or mental impairment. *See* 20 C.F.R. § 404.1576; *see also* SSR 84-26. The Agency will deduct the cost of an IRWE if: (1) the claimant is otherwise disabled; (2) the severity of the claimant's impairment requires the claimant to purchase (or rent) certain items and services in order to work; (3) the claimant pays the cost of the item or service; (4) the claimant pays for the item or service in a month in which he is working; and (5) the payment is in cash (including checks or other forms of money). 20 C.F.R. § 404.1576(b).

Here, Pass does not address any of the statutory factors and summarily argues that the ALJ should have deducted the $300 in transportation costs as an IRWE because he testified that he had some difficulty driving in areas that were not familiar to him and because "[h]e had accidents." (Br. 9.) Contrary to Pass's argument, the ALJ reasonably determined that the transportation costs did not constitute a deductible IRWE. Notably, Pass has failed to produce any *evidence* that his impairment was so severe that it required him to purchase transportation to and from work. *See Clifford*, 227 F.3d at 869 (noting that the claimant bears the burden of proof at every step except the fifth). Rather, as the ALJ reasonably noted in his decision, Pass apparently needed to purchase transportation to and from work because he totaled his own car and had not yet replaced it. (Tr. 19, 229, 235.) Indeed, as Pass now forgets to mention, he

13

testified that once he later obtained his own car, he was able to drive himself to work. (Tr. 235.) Pass's argument that the transportation costs are a deductible IRWE is therefore wholly unpersuasive.

Accordingly, the ALJ's finding that Pass engaged in SGA while working for Ivy Tech in 2000 will be affirmed.

*D. The ALJ Reasonably Determined that Pass's Work for Ivy Tech and the University of St. Francis in 2001 Was SGA*

Finally, Pass believes that the work he performed for Ivy Tech and the University of St. Francis in 2001 was not SGA. The parties focus their dispute on Pass's income from August to December 2001, during which Pass earned an average of $1,159 per month.[7] Pass again argues that his income was subsidized. He similarly claims that his earnings should be reduced by an additional $2,040 to account for a computer and software he obtained in 2001 and that he alleges is an IRWE. Pass's last arguments fail as well.

As discussed, the ALJ reasonably concluded that Pass's income had not been subsidized. Furthermore, the ALJ correctly found that the computer expenses were not an IRWE. The ALJ first noted that Pass was able to perform his teaching duties in 2000 without the aid of a computer, and without any *evidence* to the contrary, the Court will not substitute its judgment for that of the ALJ. *See Clifford*, 227 F.3d at 869 (reiterating that the court does not decide questions of credibility or re-weigh the evidence).

Furthermore, in order to be a deductible IRWE, Pass must have paid for the computer

---

[7] The parties agree that the ALJ should have divided Pass's work in 2001 into two different periods, one from January to July 2001, in which he had $693 in average monthly earnings, and another from August to December 2001, in which he had $1,159 in average monthly earnings.

14

himself. *See* 20 C.F.R. § 404.1576(b). Here, Pass argues that although his father originally purchased the computer, he reimbursed him by performing household chores. (Br. 3.) The ALJ correctly noted, however, that there is no objective evidence that Pass ever reimbursed his father. (Tr. 20.) Indeed, the only evidence that Pass's father was reimbursed for the computer is his own self-serving testimony and, again, the Court will not substitute its judgment for that of the ALJ or re-weigh the evidence. *See Clifford*, 227 F.3d at 869. Indeed, even if there was evidence that Pass reimbursed his father by performing chores, payments in kind are not deductible under the Regulations. *See* 20 C.F.R. § 404.1576(b)(5). Accordingly, the Court affirms the ALJ's finding that Pass's work in 2001 was also SGA.

## V. CONCLUSION

For the reasons articulated herein, the decision of the Commissioner is AFFIRMED. The Clerk is directed to enter a judgment in favor of the Commissioner and against Pass.

SO ORDERED.

Enter for this 6th day of June, 2011.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge
